[No. B203965. Second Dist., Div. One. Mar. 12, 2009.]

GAYLE TARKINGTON et al., Plaintiffs and Appellants, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
ALBERTSONS INC., Real Party in Interest and Respondent.

## Counsel

Leonard Carder, Robert S. Remar and Jacob F. Rukeyser for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Jones Day, Mark D. Kemple and Katie A. Richardson for Real Party in Interest and Respondent.

## Opinion

**BAUER, J.**[*]—This is an appeal from the denial of a writ petition, styled as a class action, filed by employees of Albertsons Inc. (Albertsons) seeking to reverse an administrative decision denying them unemployment insurance benefits during an 18-week lockout by Albertsons. On demurrer, the trial court ruled that the employees failed to allege sufficient facts supporting equitable tolling. The trial court also struck the class allegations as overly broad. The employees elected not to amend their petition in order to pursue the present appeal. We reverse and remand for further proceedings.

## FACTS AND PROCEEDINGS BELOW

### A. *Allegations of the Petition*[1]

In August 2003, contract negotiations between the United Food and Commercial Workers International Union (UFCW) and Albertsons, Ralphs Grocery Company (Ralphs), and The Vons Companies, Inc. (Vons), commenced. During the negotiations, Albertsons, Ralphs, and Vons agreed that they would act as one bargaining unit and consider a strike against one grocer as a strike against all three grocers. The three grocers, along with a fourth grocer (Food 4 Less/Foods Co.) that was not a party to the negotiations, also agreed that they would share all revenues and losses resulting from a strike by the union or a lockout by one or more of the grocers.

On October 11, 2003, Vons employees went on strike. The next day, Albertsons and Ralphs announced that they would lock out all of their union employees (i.e., those employees who held active memberships with UFCW) except pharmacists, whose continued work was ostensibly required to protect public health and safety. During the lockout, both Albertsons and Ralphs encouraged a number of employees to either resign their union membership or return to work under false names and Social Security numbers. On February 26, 2004, UFCW and the three grocers reached a contract, thus ending the strike against Vons and the lockouts by Albertsons and Ralphs.

A number of Albertsons and Ralphs employees filed claims with California's Employment Development Department (EDD) for unemployment insurance benefits during the 18-week lockout period. EDD denied their claims because,

---

[*]Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Because the challenged ruling arises in the context of a demurrer, we accept as true the material factual allegations of the first amended petition for writ of mandate, the operative pleading. (*Johnson v. State Water Resources Control Bd.* (2004) 123 Cal.App.4th 1107, 1110 [20 Cal.Rptr.3d 441].)

in EDD's view, the employees voluntarily left work over a trade dispute, thus falling within the ambit of Unemployment Insurance Code section 1262.[2]

Petitioners Gayle Tarkington and Joel Straub, two Albertsons employees whose claims had been denied by the EDD, appealed the decision to the California Unemployment Insurance Appeals Board (CUIAB). CUIAB set the hearings on the appeals in March, May, and July of 2004. It sent notice of the hearings to thousands of claimants, and hundreds attended the hearings. At the hearings, Tarkington and Straub asserted that they were seeking unemployment benefits on a "class- or group-wide" basis. Hundreds of claimants who attended the hearings chose not to present their own statements on the record in reliance on the assertions that the Tarkington and Straub case would yield classwide relief.

In November 2004, the CUIAB issued a written decision (authored by Administrative Law Judge (ALJ) F.G. Knipe) concluding that UFCW had "instituted the 'first blow' " by initiating a strike against Vons and thus its members, including the employees locked out by Albertsons, were ineligible for unemployment benefits because they fell within the ambit of section 1262. In December 2004, ALJ Knipe issued a nearly identical decision denying benefits for employees locked out by Ralphs.

Tarkington and Straub appealed ALJ Knipe's decision to the board panel members of the CUIAB (Board), on behalf of themselves and all persons similarly situated. On June 13, 2005, the Board issued a written decision affirming ALJ Knipe's ruling that the employees locked out by Albertsons had voluntarily stopped working over a trade dispute. On June 22, 2005, the Board issued a virtually identical decision regarding Ralphs employees.

B. *Procedural History*

On December 12, 2005, Tarkington and Straub, along with two Ralphs employees (John Duran and Deborah Brown) who had also sought review by the Board and were denied relief, filed a petition for writ of administrative mandate in Los Angeles Superior Court, styled as a class action, against the

---

[2] Unemployment Insurance Code section 1262 provides: "An individual is not eligible for unemployment compensation benefits, and these benefits shall not be payable to him or her, if the individual left his or her work because of a trade dispute. The individual shall remain ineligible for the period during which he or she continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he or she was employed." Unless otherwise specified, all subsequent statutory references are to the Unemployment Insurance Code.

CUIAB and named as real parties in interest Albertsons and Ralphs.[3] The joint petition alleged that Albertsons and Ralphs falsified their reasons for permitting pharmacists to work during the lockout, urged employees to resign their union membership, encouraged their locked out employees to work under false names and Social Security numbers, and entered into an illegal profit-sharing agreement with Food 4 Less, a grocer that was not a party to the negotiations. The joint petition sought a writ of mandamus ordering the CUIAB to set aside its June 13 and 22 decisions and pay unemployment benefits to the joint petitioners and all other class members.

On May 17, 2006, Albertsons demurred to the petition, raising the following arguments: the joint petition improperly joined claims made against Albertsons and Ralphs; the class allegations were vague and failed to describe an ascertainable class with a community of interest; and the joint petition failed to allege that all putative class members had exhausted administrative remedies.

On December 8, 2006, at the hearing on the demurrer, the trial court invited suggestions from all parties about how the court should proceed if it concluded the joint petition had improperly joined Albertsons and Ralphs as real parties in interest. Counsel for Albertsons maintained that the joint petitioners would have "to file two lawsuits," but noted "[t]here's no statute [of] limitations problem, I don't believe." He went on to argue "that the way to do it mechanically is unjoin them and have separate trials." On December 11, 2006, the trial court sustained the demurrer, ruling: "There is a misjoinder of parties defendant. The defendant real parties in interest have been misjoined since there is no joint, several or alternative liability under Code of Civil Procedure section 379(a)." The court gave the joint petitioners 10 days' leave to amend with no further direction.

On December 20, 2006, the joint petitioners, through a motion for reconsideration, urged the trial court to maintain one action against both grocers and bifurcate those issues in which a single proceeding might prejudice one of the grocers. At the hearing, after the trial court announced its tentative decision to deny the motion, the joint petitioners sought clarification about how they should proceed in light of the court's anticipated ruling. The court replied: "As far as your comments on how to handle it, I'm not here to give

---

[3] The case title is *Tarkington v. California Unemployment Insurance Appeals Bd.* (Super. Ct. L.A. County, 2007, No. BS100719). To distinguish this petition from the underlying petition from which the current appeal arises, we will refer to it as the "joint petition" and the four petitioners as the "joint petitioners."

advice on how to practice law or on how to plead, but I think you can keep alive one case under this number . . . and go with another case which will probably get related to this." On January 19, 2007, the trial court denied the motion for reconsideration citing the absence of "new or different facts, circumstances or law."

On February 1, 2007, Tarkington and Straub filed a petition for writ of mandate in Los Angeles Superior Court, styled as a class action, against the CUIAB and named only Albertsons as the real party in interest.[4] The instant petition's allegations mirrored those made in the joint petition (but for the allegations against Ralphs) and sought the same relief. The Ralphs petitioners remained in the original case, under the original case number, and filed an amended petition.[5]

Albertsons demurred to the instant petition raising the following arguments: the action was time-barred; the class allegations were overly broad and included individuals who had no beneficial interest in the outcome of the litigation; the putative class members failed to exhaust their administrative remedies; and review of the denial of unemployment benefits is not amenable to class treatment.

On May 25, 2007, the trial court sustained the demurrer with leave to amend and ruled as follows: "The defined class is too broad. It should not include putative class members who are time-barred by the statute of limitations, those who did not pursue their administrative remedies, and those who dismissed their appeals to the appeals board. Only those who exhausted their administrative remedies and are not time-barred should be part of the class. The petition against Albertson's appears to be time-barred on its face. Petitioner needs to specifically plead equitable tolling to overcome dismissal, based upon the statute of limitations found in the Unemployment Insurance Code."

On June 14, 2007, Tarkington and Straub amended the instant petition to include allegations supporting equitable tolling. The class allegations remained unchanged. Albertsons demurred, arguing that petitioners failed to allege specific facts in support of equitable tolling. Albertsons also filed a motion to strike the class allegations, arguing that because Tarkington and

---

[4] The case title is *Tarkington v. California Unemployment Insurance Appeals Bd.* (Super. Ct. L.A. County, 2007, No. BS107174). To distinguish it from the joint petition, we refer to this action as the "instant petition."

[5] We take judicial notice of the docket in the joint petition. (*In re Estevez* (2008) 165 Cal.App.4th 1445, 1451, fn. 4 [83 Cal.Rptr.3d 479, 484, fn. 4].)

Straub failed to amend the class allegations when given the opportunity, all such allegations should be stricken. The trial court sustained the demurrer with leave to amend, granted the motion to strike, and instructed Tarkington and Straub to amend their petition to allege additional facts in support of equitable tolling and to omit the class allegations altogether.

Tarkington and Straub elected not to amend the instant petition and instead sought a judgment of dismissal in order to pursue the matter on appeal. Pursuant to an ex parte application by Albertsons, the trial court dismissed the instant petition with prejudice. Petitioners timely appealed from the final judgment.

## DISCUSSION

### I. *Standard of Review*

"We review a trial court's ruling on a demurrer independently. [Citation.]" (*Liska v. The Arns Law Firm* (2004) 117 Cal.App.4th 275, 281 [12 Cal.Rptr.3d 21].) "Our task in reviewing a judgment of dismissal following the sustaining of . . . a demurrer is to determine whether the complaint states, or can be amended to state, a cause of action. For that purpose we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed. [Citations.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) Where, as here, " 'a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can.' " (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162].)

### II. *Statute of Limitations*

The six-month statute of limitations began to accrue on June 13, 2005, when the Board issued its final decision denying unemployment benefits to Tarkington and Straub.[6] The instant petition bears a file-stamp date of February 1, 2007.[7] Because the instant petition shows on its face that it is

---

[6] "[T]he right . . . to seek judicial review from an appeals board decision shall be exercised not later than six months after the date of the decision of the appeals board . . . ." (§ 410.)

[7] In some of their papers below, Tarkington and Straub contend that even though the instant petition bears a file-stamp date of February 1, 2007, they in fact sent the court a copy of the petition on January 25, 2007, for next-day delivery. According to a declaration by their counsel, the court received the petition on January 26, 2007, at 9:46 a.m. Because petitioners

barred by the applicable statute of limitations, Tarkington and Straub "must plead facts which show an excuse, tolling, or some other basis for avoiding the statutory bar." (*Ponderosa Homes, Inc. v. City of San Ramon* (1994) 23 Cal.App.4th 1761, 1768 [29 Cal.Rptr.2d 26].)

■ "The 'equitable tolling' doctrine evolved in the 1970's to toll statutes of limitations when defendants would not be prejudiced and plaintiffs, who had several legal remedies, pursued one such remedy reasonably and in good faith." (*Downs v. Department of Water & Power* (1997) 58 Cal.App.4th 1093, 1100 [68 Cal.Rptr.2d 590] (*Downs*).) It "is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370 [2 Cal.Rptr.3d 655, 73 P.3d 517].) The doctrine of equitable tolling works "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." (*Ibid.*)

"Three factors determine whether the statute of limitations is equitably tolled in a particular case: (1) timely notice to defendants in filing the first claim; (2) lack of prejudice to defendants in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by plaintiffs in filing the second claim." (*Downs, supra*, 58 Cal.App.4th at p. 1100.) We turn to these factors, keeping in mind that in this case, the "first claim" is the joint petition filed against Albertsons and Ralphs in December 2005 and the "second claim" is the petition filed against Albertsons in February 2007.

■ 1. Timely notice: "The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second." (*Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 924 [191 Cal.Rptr. 681] (*Collier*).)

The first factor is satisfied. In paragraphs 10 and 18 of the operative pleading, Tarkington and Straub alleged that the Board issued its final decision denying benefits for Albertsons employees on June 13, 2005, and that they (along with Duran and Brown) filed the joint petition on

did not include this contention as an allegation in the instant petition as amended, we will disregard it and assume for purposes of this appeal that the action was filed on February 1, 2007.

December 12, 2005, which was within the six-month statutory period. Further, Albertsons was named as a real party in interest in both the joint petition and the instant petition.

██ 2. Lack of prejudice: "The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." (*Collier, supra,* 142 Cal.App.3d at p. 925.) "So long as the two claims are based on essentially the same set of facts timely investigation of the first claim should put the defendant in position to appropriately defend the second. Once he is in that position the defendant is adequately protected from stale claims and deteriorated evidence." (*Ibid.*)

The second factor is satisfied. The allegations regarding Albertsons's conduct in the joint petition *mirror* the allegations in the instant petition. We cite some examples:

"On or about August 5, 2003, in anticipation of a pending contract renegotiation with the Union, the Employers entered into a Mutual Strike Assistance Agreement ('the MSAA') which committed [them] to share any costs and revenues disproportionately earned or lost as a result of the strike or lockout." (Par. 23 of joint petn.; par. 28 of instant petn.)

"The MOA's expressed the parties' agreement that there be a 'single multi-employer/union bargaining unit' for the purposes of the negotiations and stated the Employers' position that a strike against one of the employers would be treated as a strike against all of the employers." (Par. 28 of joint petn.; par. 33 of instant petn.)

"Shortly before the lockout was implemented, Albertson's had begun informing bargaining unit members of their right to become non-union financial core members and thus resign their union membership. Albertson's campaign to solicit union members' resignations targeted sympathetic workers, pharmacists in particular, who were most likely to resign." (Par. 35 of joint petn.; par. 41 of instant petn.)

"Shortly before and during the lockout, Albertson's store managers told bargaining unit employees that they could work during the lockout under false names and social security numbers. . . . [¶] . . . [¶] Indeed, Albertson's confirmed the fact that bargaining unit members performed bargaining unit work during the lockout under false names and social security numbers." (Par. 52 of joint petn.; par. 56 of instant petn.)

Based on these allegations and others, both petitions sought the same relief, i.e., a reversal of the Board's decision denying unemployment benefits

to locked-out employees. Albertsons cites no material fact, nor can we identify any, alleged in the instant petition that was not already alleged in the joint petition. In short, the claims made in the joint petition placed Albertsons "in position to appropriately defend" against the almost identical claims made in the instant petition, and Albertsons will suffer no prejudice if we allow the instant petition to proceed forward. (*Collier, supra*, 142 Cal.App.3d at p. 925.)

■ 3. <u>Good faith and reasonable conduct</u>: The third requirement of good faith and reasonable conduct may turn on whether "a plaintiff delayed filing the second claim until the statute on that claim had nearly run . . ." or "whether the plaintiff [took] affirmative actions which . . . misle[d] the defendant into believing the plaintiff was foregoing his second claim." (*Collier, supra*, 142 Cal.App.3d at pp. 926, 932.)

In assessing whether Tarkington and Straub acted reasonably and in good faith when they filed the instant petition, we review the relevant time line:

— June 13, 2005: Board issues final decision denying benefits.

— December 12, 2005: Joint petitioners file joint petition.

— May 17, 2006: Albertsons demurs to the joint petition.

— December 11, 2006: Trial court sustains demurrer with leave to amend.

— December 20, 2006: Joint petitioners seek reconsideration.

— January 19, 2007: Trial court denies motion for reconsideration.

— February 1, 2007: File-stamped date of instant petition.

While it is true, as Albertsons repeatedly points out, that Tarkington and Straub filed the instant petition more than two years after filing the joint petition, almost all of the elapsed time is attributable to the time used by the trial court to issue its rulings. When Tarkington and Straub finally learned of the court's decision on the issue of joinder, i.e., on January 19, 2007, they filed the present petition less than two weeks later, on February 1, 2007. We do not view this short period of time as unreasonable or in bad faith, especially in light of the protracted nature of the underlying litigation. Moreover, there is no allegation that Tarkington and Straub misled Albertsons into thinking that they would forgo their claims against it once they were separated from the Ralphs petitioners. In fact it was Albertsons that pushed to

have the joint petition split into two actions and its counsel who noted that there was no statute of limitations issue in his view.

Nonetheless, Albertsons contends that Tarkington and Straub acted unreasonably and in bad faith because they waited until the "last possible hour" to file the joint petition, and they continued to litigate the issue of joinder even though they conceded that there was no joint, several, and/or alternate liability between Albertsons and Ralphs. We reject both contentions.

First, whether Tarkington and Straub waited until the last possible hour to file the joint petition, i.e., the *first* claim, is beside the point. (*Collier, supra*, at pp. 931–932 [requirement of good faith and reasonable conduct may turn on whether a plaintiff delayed filing the *second* claim until the statute of limitations on that claim had nearly run].) What matters is whether the first claim was filed in a timely fashion and here there is no dispute that Tarkington and Straub had until December 13, 2005, to challenge the Board's decision and they filed the joint petition one day before that date.

Second, it is simply inaccurate to say that petitioners "conceded" there was no joint, several, and/or alternate liability between Albertsons and Ralphs. Albertsons cites to the following allegation in the instant petition as this apparent concession: "[A]ny unemployment insurance benefits paid to Petitioners will be charged against the reserve account of their respective employees." But this was far from a concession. As Tarkington and Straub's counsel argued at the hearing on the demurrer, the "issue about whether there's joint and several liability is really a red herring that has no relevance in this case. This would be a different case if we were directly suing these individual companies for money damages. We're not doing that in this case. We're seeking government benefits in the form of unemployment benefits for the class that we seek to represent." Thus, alleging that insurance benefits would be "charged" to each grocer's account did not concede the issue of joinder.

 We conclude that the doctrine of equitable tolling applies in this case and tolled the six-month statute of limitations. Perhaps anticipating this conclusion, Albertsons argues that even if equitable tolling applies, the instant petition is still untimely because Tarkington and Straub had already exhausted their statutory "clock" with the filing of the joint petition and thus had no remaining time left to file the instant petition. Albertsons cites a number of equitable tolling cases and notes that, in each case, "the plaintiff had time remaining on the statutory 'clock' after the conclusion of the first action; and, once the clock was restarted, the plaintiffs in those cases acted before the

remaining time had run."[8] (E.g., *Collier, supra,* 142 Cal.App.3d 917, 931–932; *Elkins v. Derby* (1974) 12 Cal.3d 410, 413, fn. 1 [115 Cal.Rptr. 641, 525 P.2d 81]; *Appalachian Ins. Co. v. McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 36 [262 Cal.Rptr. 716]; *Addison v. State of California* (1978) 21 Cal.3d 313, 318 [146 Cal.Rptr. 224, 578 P.2d 941].) Albertsons reasons that, because Tarkington and Straub had one day left on the statutory clock when they filed the joint petition and they filed their instant petition 13 days after the court denied their motion for reconsideration, they were 12 days late, regardless of whether equitable tolling applied.

■ *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049] (*Friends of Mammoth*) is instructive. In that case, the plaintiffs had 30 days to challenge a zoning decision that was issued on June 14. (*Id.* at p. 268.) On July 12, the plaintiffs filed a petition for writ of administrative mandate in the Court of Appeal. On July 15, the Court of Appeal denied the petition without prejudice and directed the plaintiffs to file the action in superior court, which they did on July 19. (*Ibid.*) On appeal, the defendants argued that the second petition was untimely. The court characterized the defendants' argument as a "myopic reading of the abbreviated statute of limitations" and held that the second petition was timely because the appellate court's denial of the first petition tolled the statute of limitations. (*Id.* at p. 269.) The court cited with approval the policy of allowing a party who " 'has seasonably filed a cause of action, to try it upon its merits, notwithstanding defects in the form or substance of pleadings, [or] error in the remedy sought . . . .' " (*Ibid.*) Notably, when the plaintiffs filed their first petition, they had *two* days left on the statutory "clock," and they took *four* days to file the second writ petition in the superior court after the first petition was dismissed. (*Id.* at p. 268.) Under Albertsons's view, which the Supreme Court implicitly rejected, the plaintiffs' petition would have been untimely.

According to Albertsons, *Friends of Mammoth* ought not to control here because the plaintiffs there filed their writ petition in the wrong court and " 'promptly' " refiled the petition in the right court after the dismissal in the Court of Appeal. In contrast, as Albertsons sees it, Tarkington and Straub filed their petition in the "appropriate court," and then engaged in "dilatory behavior" by waiting "another two weeks to file an identical petition." Albertsons's distinctions are wholly unpersuasive. First, the fact that Tarkington and Straub filed their action in the appropriate court at the outset militates in favor of hearing their case on the merits. A plaintiff who files in the wrong court should not be in a better position than a plaintiff who files in the right court. Second, as we discussed earlier, we do not view Tarkington and

---

[8] While it is true that in each case cited by Albertsons the plaintiff filed the second claim while there was still time on the statutory "clock," that fact alone was not dispositive for any court's analysis.

Straub's conduct as dilatory. They filed the instant petition 13 days after the court denied their motion to reconsider, which in our view is prompt given the protracted history of the underlying litigation.

### III. *Exhaustion of Remedies*

We turn now to the trial court's ruling that the putative class should include only those individuals who exhausted their administrative remedies.

"The principal purposes of exhaustion requirements include avoidance of premature interruption of administrative processes, allowing an agency to develop the necessary factual background of the case, letting the agency apply its expertise and exercise its statutory discretion, and administrative efficiency and judicial economy." (*California Water Impact Network v. Newhall County Water Dist.* (2008) 161 Cal.App.4th 1464, 1489 [75 Cal.Rptr.3d 393].) "The exhaustion doctrine is grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary)." (*Ibid.*)

In *Friends of Mammoth, supra,* 8 Cal.3d 247, the Supreme Court addressed a situation similar to the one presented in this case. In that case, two named plaintiffs brought a putative class action challenging their local commission's decision to grant a use permit to a developer. The developer challenged the plaintiffs' standing to pursue the suit because they had not personally exhausted their administrative remedies. The Supreme Court rejected this challenge, reasoning that although the named plaintiffs had not participated in the administrative review certain individuals who were members of the putative class had already exhausted their administrative remedies. Those individuals, the court explained, would have "expressed the position of the representative plaintiff in the class suit, and the Board will have had its opportunity to act and to render litigation unnecessary, if it had chosen to do so." (*Id.* at p. 267.) Under those circumstances, the Supreme Court held that the purposes underlying the exhaustion doctrine were satisfied and the action could proceed forward. (*Id.* at pp. 267–268.) Requiring the named plaintiffs to exhaust their remedies when others in their class had already done so, the court noted, "would serve no additional useful purpose" because "[n]othing more could effectuate the policy of the exhaustion doctrine." (*Id.* at p. 268.)

*Leff v. City of Monterey Park* (1990) 218 Cal.App.3d 674 [267 Cal.Rptr. 343] is likewise instructive. In that case, three individuals (Nugen, Leff, and Rabins) filed an action challenging their city's decision to grant a developer permission to build an elder care facility. Although Leff and Rabins had

participated in the administrative review process, Nugen had not, and, for this reason, the developer directed a demurrer solely at Nugen for his failure to exhaust administrative remedies. (*Id.* at p. 676.) The Court of Appeal reversed the trial court's sustaining of the demurrer, holding that Nugen was not required to exhaust his administrative remedies because his copetitioners had already done so. (*Id.* at p. 681, citing *Friends of Mammoth, supra*, 8 Cal.3d at p. 267.) The court noted that even though the petitioners did not commence the litigation as a "class action," the petitioners who had exhausted their administrative remedies shared a common interest with Nugen, and thus he was not required to exhaust the same remedies before the action could proceed forward. (*Leff*, at p. 682.)

■ Here, as in *Friends of Mammoth* and *Leff*, the putative class contains members who have already exhausted their administrative remedies, namely Tarkington and Straub. They appealed the EDD's rejection of their claim for unemployment benefits to ALJ Knipe, and, when Knipe denied their appeal, they sought relief from the Board. The decisions by both Knipe and the Board squarely addressed the legal issue of whether Albertsons employees, who could not work because of the lockout, fall within the ambit of section 1262 and are not entitled to unemployment benefits. This legal question is common to all members of the putative class. By giving the Board the opportunity to consider the situation, use its expertise, decide this issue, and render litigation unnecessary, Tarkington and Straub fulfilled all the purposes of the exhaustion doctrine. Like the Supreme Court in *Friends of Mammoth*, we conclude that requiring all putative class members to exhaust their remedies "would serve no additional useful purpose" because "[n]othing more could effectuate the policy of the exhaustion doctrine." (*Friends of Mammoth, supra*, 8 Cal.3d at p. 268.)

*Rose v. City of Hayward* (1981) 126 Cal.App.3d 926 [179 Cal.Rptr. 287] (*Rose*) and *Lopez v. Civil Service Com.* (1991) 232 Cal.App.3d 307 [283 Cal.Rptr. 447] (*Lopez*), the lead cases cited by Albertsons on this issue, do not support a different conclusion.

In *Rose*, four named plaintiffs filed a petition for writ of mandate to compel the administrator of their pension plan (PERS) to include the value of certain fringe benefits in its calculation of the plaintiffs' pension benefits. (*Rose, supra*, 126 Cal.App.3d at p. 930.) *None* of the named plaintiffs sought an administrative hearing with PERS before instituting the action. (*Ibid.*) The trial court denied the plaintiffs' motion for class certification and dismissed the action because the plaintiffs had failed to exhaust their administrative remedies. (*Id.* at p. 931.) The Court of Appeal reversed, holding that "plaintiffs in a class action need not exhaust their administrative remedies prior to instituting judicial proceedings where the administrative remedies available to the plaintiffs do not provide for class relief." (*Id.* at p. 935.)

In *Lopez*, one plaintiff (Lopez) filed a petition for writ of mandate, styled as a class action, to compel the San Francisco Civil Service Commission (Commission) to include salary data from the private sector in determining the salaries of city meter readers. (*Lopez, supra*, 232 Cal.App.3d at p. 310.) The trial court granted summary judgment in favor of the Commission because Lopez had not exhausted his administrative remedies. On appeal, Lopez argued that the exhaustion doctrine is per se inapplicable to class action lawsuits. The Court of Appeal rejected this sweeping argument, holding that "the designation of [a] complaint as a 'class action' does not insulate Lopez from the requirement of exhausting his administrative remedies." (*Id.* at p. 313, fn. omitted.) Because Lopez failed to rebut the Commission's evidence that appeals from individual employees had the power to affect an entire class of employees—i.e., there was an administrative remedy capable of providing class relief—the court concluded summary judgment was proper. (*Id.* at p. 313.)

*Rose* and *Lopez* provide guidance when none of the putative class member plaintiffs, named or otherwise, exhausts administrative remedies. In such cases, the relevant inquiry is whether the available administrative remedies provide classwide relief. If the remedies do provide classwide relief, than at least one plaintiff must exhaust them before litigation may proceed. If the remedies do not provide classwide relief, then no plaintiff need exhaust them before suing. Neither *Rose* nor *Lopez* applies here, because there is no dispute that Tarkington and Straub exhausted their administrative remedies.

IV. *Class Allegations*[9]

■ "California's judicial policy [is to allow] potential class action plaintiffs to have their action measured on its merits to determine whether trying their suits as a class action would bestow the requisite benefits upon the litigants and the judicial process to justify class action litigation." (*Beckstead v. Superior Court* (1971) 21 Cal.App.3d 780, 783 [98 Cal.Rptr. 779].) "In order to effect this judicial policy, the California Supreme Court has mandated that a candidate complaint for class action consideration, if at all possible, be allowed to survive the pleading stages of litigation." (*Ibid.*, citing *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 868–869 [97 Cal.Rptr. 849, 489 P.2d 1113] [reversing trial court's sustaining of demurrer against class action suit]; see *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 816 [94 Cal.Rptr. 796, 484 P.2d 964] [same]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 716–717 [63 Cal.Rptr. 724, 433 P.2d 732] [same]; *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 121 [81 Cal.Rptr. 592, 460 P.2d 464] [affirming trial court's overruling of demurrer attacking class allegations].)

[9] We note that petitioners have neither sought nor obtained class certification for their action.

"The wisdom of allowing survival is elementary. Class action litigation is proper whenever it may be determined that it is more beneficial to the litigants and to the judicial process to try a suit in one action rather than in several actions. . . . It is clear that the more intimate the judge becomes with the character of the action, the more intelligently he may make the determination. If the judicial machinery encourages the decision to be made at the pleading stages and the judge decides against class litigation, he divests the court of the power to later alter that decision . . . . Therefore, because the sustaining of demurrers without leave to amend represents the earliest possible determination of the propriety of class action litigation, it should be looked upon with disfavor." (*Beckstead v. Superior Court, supra,* 21 Cal.App.3d at p. 783.)

Despite the policy disfavoring the determination of class suitability issues at the pleading stage, several cases, including those cited by Albertsons, have done exactly that. (See, e.g., *Silva v. Block* (1996) 49 Cal.App.4th 345, 348 [56 Cal.Rptr.2d 613] [trial court properly determined class issues on demurrer, since it was apparent from the face of the pleading that issues requiring separate adjudication—both of liability and damages—predominated over common questions]; *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1234 [271 Cal.Rptr. 72] [in this mass tort action, "it would be a waste of time and judicial resources to require a full evidentiary hearing [on class suitability] when the matter can properly be disposed of by demurrer"]; *Brown v. Regents of University of California* (1984) 151 Cal.App.3d 982, 990–991 [198 Cal.Rptr. 916] [determination of class status by demurrer proper in mass tort action].)

■ In *Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320 [13 Cal.Rptr.3d 725], after an exhaustive review of the relevant case law, this division determined that the apparent conflict was in fact not a conflict at all: "[I]t is only in mass tort actions (or other actions equally unsuited to class action treatment) that class suitability can and should be determined at the pleading stage. In other cases, particularly those involving wage and hour claims, class suitability should not be determined by demurrer." (*Id.* at p. 1325.) We reasoned that in mass tort actions individual questions of liability and damages frequently predominate over common questions and resolving class suitability at the pleading stage is therefore proper. (*Id.* at pp. 1327–1328.) In contrast, we explained, "wage and hour disputes (and others in the same general class) routinely proceed as class actions" because they usually involve " 'a single set of facts applicable to all members,' " and " 'one question of law common to all class members.' " (*Id.* at p. 1328.) As long as a plaintiff "alleges institutional practices . . . that affected all of the members of the potential class in the same manner, and it appears from the complaint that all liability issues can be determined on a class-wide basis," we held that "no more is required" at the pleading stage. (*Id.* at p. 1329.)

In our view, the petition in this case is more like a wage and hour case than a mass tort action. It involves a single set of facts (i.e., those allegations pertaining to Albertsons's selective lockout and illegal hiring of locked out employees), one question of law common to all class members (i.e., whether employees who could not work because of Albertsons's lockout fall under the ambit of § 1262), and one institutional practice (i.e., the denial of benefits to locked out employees by the EDD and the Board). While there may be individual questions of the amount of benefits, if any, to which each claimant is entitled, we do not see these questions as predominant over the common factual allegations and legal questions cited above. (Accord, *Vasquez v. Superior Court, supra*, 4 Cal.3d at p. 809 ["the fact that each member of the class must prove his separate claim to a portion of any recovery by the class is only one factor to be considered in determining whether a class action is proper"]; *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1272, 1279 [242 Cal.Rptr. 339] [rejecting county's argument that denial of governmental benefits was not suitable for class treatment because "each recipient's right to recover depends on the facts peculiar to his/her case . . ." and noting that "it is especially appropriate to proceed with a class action to provide effective relief when, as here, a large number of [class members] have been allegedly, improperly denied governmental benefits on the basis of an invalid administrative practice"].)

In line with our decision in *Prince,* we conclude that it was premature for the trial court to make determinations pertaining to class suitability on demurrer. We reverse the court's order granting Albertsons's motion to strike and the court's accompanying legal ruling that the class definition was "too broad." The putative class definition alleged in the petition, which we cite here, is sufficient to move forward past the pleading stage: "Petitioners . . . bring this petition for writ of administrative mandamus on behalf of the entire class of individuals who were employed by Albertson's at any time during the period October 11, 2003 through February 26, 2004, and who filed timely claims with the EDD for unemployment insurance benefits for all or some of this period, and were denied such benefits on the basis of the trade dispute exception, California Unemployment Insurance Code § 1262 . . . ."

Because we conclude the trial court acted prematurely, we do not now reach the arguments raised by Albertsons regarding class suitability (e.g., a majority of the putative class members do not have a "beneficial interest" in the litigation; the class definition renders impossible the creation of an administrative record; and the putative class lacks a community of interest, thus rendering plaintiffs' claims not amendable to class treatment). Albertsons is free to raise these arguments and others when Tarkington and Straub move to certify the class at a later stage.

## DISPOSITION

The judgment is reversed. Plaintiffs shall recover their costs on appeal.

Mallano, P. J., and Rothschild, J., concurred.

A petition for a rehearing was denied April 7, 2009.