187 Cal.App.4th 969 (2010)
114 Cal. Rptr. 3d 611
SERGIO GUTIERREZ et al., Plaintiffs and Appellants,
v.
CALIFORNIA COMMERCE CLUB, INC., Defendant and Respondent.
No. B212062.
Court of Appeals of California, Second District, Division One.
August 2, 2010.
*971 Rastegar & Matern, Matthew J. Matern and Thomas S. Campbell for Plaintiffs and Appellants.
Winston & Strawn, Anna Segobia Masters and Jennifer Rappoport for Defendant and Respondent.

OPINION
JOHNSON, J. 
Sergio Gutierrez and Hector Salazar filed the operative third amended class action complaint against California Commerce Club, Inc. *972 (Club), alleging, among other things, that they and other similarly situated members of the putative class were injured by the Club's unlawful policy and practice of denying meal and rest breaks to certain hourly, non-union employees. The trial court sustained the Club's demurrer without leave to amend, on the ground plaintiffs had failed to show the existence of a class, and dismissed the action as to all representative claims. We reverse. In this action, as in the vast majority of wage and hour disputes, class suitability should not be determined on demurrer.

BACKGROUND
The challenged ruling arises in the context of an order sustaining a demurrer without leave to amend. Accordingly, we accept as true the factual allegations of the operative pleading. (Tarkington v. California Unemployment Ins. Appeals Bd. (2009) 172 Cal.App.4th 1494, 1498, fn. 1 [92 Cal.Rptr.3d 131] (Tarkington).)

Initial complaint
In October 2006 Gutierrez filed a purported class action complaint, alleging three causes of action stemming from the Club's alleged (1) failure to provide Gutierrez and other nonexempt Club employees with rest breaks and compensation in violation of Labor Code section 226.7 (section 226.7) and Industrial Welfare Commission wage and hour order No. 10-2001, section 12 (Order 10-2001); (2) violation of Labor Code section 2699, the Labor Code Private Attorneys General Act of 2004 (PAGA), for which Gutierrez sought civil penalties; and (3) unlawful business practices in violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200).[1] Gutierrez alleged the Club currently employed over 1,000 hourly employees who, together with similarly situated former employees, had been subjected to the same illegal payroll practices and policies. Gutierrez purported to represent all of the Club's similarly situated employees who were not dealers.[2]
The Club demurred to the complaint on the grounds that it failed to state facts sufficient to state causes of action for violations of Labor Code sections 226.7, 558 and PAGA, was fatally uncertain as to the scope of the purported class, and that no private cause of action existed under section 226.7. That demurrer was mooted when Gutierrez filed a first amended complaint.

*973 First amended complaint

On March 29, 2007, Gutierrez filed a first amended complaint (FAC) premised again on the theory of missed rest periods and unpaid compensation, and alleging causes of action for (1) failure to provide rest periods in violation of section 226.7 and Order 10-2001; (2) violation of PAGA; (3) violation of Labor Code section 558; and (4) unlawful business practices in violation of the UCL.
The Club demurred to the FAC, arguing it was impermissibly vague, ambiguous and unintelligible with respect to the group of employees whom Gutierrez purported to represent. In addition, the Club argued Gutierrez had failed to state facts to constitute any cause of action, in that he failed to allege whom had been injured by the conduct about which he complained. Contemporaneous with its filing of the demurrer, the Club also filed a motion to strike penalties Gutierrez sought pursuant to Labor Code section 558 from the cause of action for violation of the UCL.
The trial court overruled the Club's demurrer. Although it described the FAC as "bottom feeding," and having "the scooping effect of a swiner or drag net," the court found the allegations of that pleading minimally adequate, noting there would be "ample time later to determine whether there is a single class, several classes and whether this plaintiff can represent some or all of the classes ... [and that,] in this case, the statement that defendant has not provided its employees with proper rest periods states both the facts and the theory."

Second amended complaint
In February 2008, having received leave of court to do so, Gutierrez filed a second amended complaint (SAC) adding Salazar as a plaintiff, and adding an additional cause of action for failure to provide meal breaks and compensation in violation of section 226.7, and Order 10-2001, section 11.
The Club demurred. It argued plaintiffs had failed to satisfy the requirements of Code of Civil Procedure section 382, and had not stated facts sufficient to state a cause of action. The Club argued that the allegations purportedly identifying the putative class as "`all current and former non-exempt employees'" were insufficient to provide reasonable notice of (1) an ascertainable class, (2) how the alleged violations occurred as to each of them, and (3) how the named plaintiffs were "`similarly situated'" to the purported class members and could adequately represent them. The Club also argued the fifth cause of action for violation of the UCL was redundant of the allegations of the third cause of action for violation of PAGA.
*974 The trial court sustained the demurrer with leave to amend. It found the SAC was: "so general that it fails to provide any notice who is in the class, what they do, how they are related or even what plaintiff [sic] does. It is basically a wide net cast to grab and catch anyone who is still alive and kicking after ... [certain] related cases ... are due for final approval. What the [SAC] fails to do is notify this court and the defendant who is in the class. In short the [SAC] is long on allegations, but short on facts. [Citation.] As the [SAC] now reads, it could cover all of the plaintiffs in the related cases."

Third amended complaint
In mid-April 2008, appellants filed the operative third amended proposed class action complaint (TAC), alleging the same five causes of action as in the SAC. In contrast to past iterations of their complaint, the TAC contained allegations of fact regarding the "Casino department and its various sub departments" in which named plaintiffs Gutierrez (a bus boy and bartender), and Salazar (a cook), worked. The TAC listed the representative job positions of over 1,000 hourly employees Gutierrez and Salazar purported to represent "includ[ing] but not limited to, bus boys, floor persons, chip runners, card washers, card muckers, equipment specialists, porters, food and beverage workers, food service, cooks, cooks helpers, kitchen staff, bartenders, cocktail servers, transportation workers, security officers, administrative staff, service staff, housekeepers, engineers, receiving, PBX, purchasing, surveillance, Information Technology (`I.T.') for a period of time within the four (4) years preceding the filing of this action." Plaintiffs also alleged that theyand similarly situated class members of current and former employees who had worked in the Club's casino department since October 2002were subjected to the Club's uniform practice or policy of failing to provide rest and meal breaks and full wages, in violation of the Labor Code and Order 10-2001. They also alleged violations of the PAGA and UCL.
The Club filed another demurrer. It reiterated its earlier arguments that the TAC failed to state facts sufficient to state a cause of action, in that its allegations purportedly identifying the putative class failed to provide reasonable notice of an ascertainable class or why such class was covered by this action. The Club also argued the TAC contained insufficient factual allegations to provide reasonable notice to show that Gutierrez and Salazar were "`similarly situated'" to and could adequately represent the putative class members. Further, the Club argued that the first and second causes of action for failure to provide meal and rest periods failed, because the TAC failed to allege "in what manner the Casino failed to provide rest breaks or how the Casino impeded, discouraged or dissuaded employees from taking rest periods" or "any facts stating how the Casino prevented them from taking their meal and rest breaks."
*975 The trial court sustained the demurrer to the class action allegations of the TAC without leave to amend. The court found that notwithstanding four attempts to do so, Gutierrez and Salazar failed to: "allege facts sufficient to show the existence of a class. What they have done is to cast a wide net to cover anyone who is or was an employee and who is not part of management. What they have failed to do is to notify the court who is in the class, what they do, how they are related and why plaintiffs are the proper persons to represent this all-inclusive class. (See e.g., Kennedy v. Baxter Healthcare Corp. (1996) 43 Cal.App.4th 799 [50 Cal.Rptr.2d 736].)"
The court dismissed the action as to all putative class members, as to the class representatives and all classwide allegations. It permitted the action to proceed as to the two named plaintiffs in their individual capacities. This appeal followed.

DISCUSSION[3]

1. Standard of review

(1) A demurrer to class allegations may be sustained without leave to amend only if it is clear "`there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact.'" (Blakemore v. Superior Court (2005) 129 Cal.App.4th 36, 53 [27 Cal.Rptr.3d 877].) If there is a reasonable possibility the plaintiffs can plead a prima facie community of interest among class members, "`"the preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation."'" (Ibid., citing Brown v. Regents of University of California (1984) 151 Cal.App.3d 982, 988 [198 Cal.Rptr. 916].)
On review from an order sustaining a demurrer, we exercise our independent judgment on whether a cause of action has been stated as a matter of law. (Tarkington, supra, 172 Cal.App.4th at p. 1502.) "`Our task in reviewing a judgment of dismissal following the sustaining of ... a demurrer is to *976 determine whether the complaint states, or can be amended to state, a cause of action.'" (Ibid.; see Moore v. Regents of University of California (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 446, 793 P.2d 479].) We will affirm if the trial court's decision was correct on any theory. (Kennedy v. Baxter Healthcare Corp., supra, 43 Cal.App.4th at p. 808 (Kennedy).)

2. Controlling principles
(2) "`Section 382 of the Code of Civil Procedure authorizes class [action] suits in California when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members.... The community of interest requirement involves three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." . . . Other relevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing....'" (Prince, supra, 118 Cal.App.4th at p. 1324, quoting Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 434-435 [97 Cal.Rptr.2d 179, 2 P.3d 27], citations omitted.)
(3) Judicial policy in California has long discouraged trial courts from determining class sufficiency at the pleading stage and directed that this issue be determined by a motion for class certification. "`In order to effect this judicial policy, the California Supreme Court has mandated that a candidate complaint for class action consideration, if at all possible, be allowed to survive the pleading stages of litigation.' [Citations.]" (Tarkington, supra, 172 Cal.App.4th at p. 1510.)
(4) The wisdom of permitting the action to survive a demurrer is elementary. "`Class action litigation is proper whenever it may be determined that it is more beneficial to the litigants and to the judicial process to try a suit in one action rather than in several actions.... It is clear that the more intimate the judge becomes with the character of the action, the more intelligently he may make the determination. If the judicial machinery encourages the decision to be made at the pleading stages and the judge decides against class litigation, he divests the court of the power to later alter that decision .... Therefore, because the sustaining of demurrers without leave to amend represents the earliest possible determination of the propriety *977 of class action litigation, it should be looked upon with disfavor.' [Citation.]" (Tarkington, supra, 172 Cal.App.4th at p. 1511; see also Prince, supra, 118 Cal.App.4th at p. 1326.)
The Club is correct that there are circumstances in which granting a motion to strike or sustaining a demurrer without leave to amend a class action complaint will be appropriate. A review of the cases in which courts have approved the use of demurrers to determine the propriety of class actions, however, reveals that the majority of those actions involved mass torts or other actions in which individual issues predominate.
Kennedy, the authority on which the trial court relied to buttress its decision to sustain the Club's demurrer without leave to amend, is illustrative. Kennedy was a mass tort class action against manufacturers, distributors and sellers of latex gloves, in which the proposed class consisted of health care workers across California who allegedly sustained injuries as a result of allergic reactions from repeated exposure to the gloves. (Kennedy, supra, 43 Cal.App.4th at p. 803.) The action was unsuited to class action treatment because "[i]ndividual questions clearly predominate[d] in determining liability, causation, damages and defenses." (Id. at p. 810.) Similar cases have reached similar results. (E.g., Clausing v. San Francisco Unified School Dist. (1990) 221 Cal.App.3d 1224, 1233-1234 [271 Cal.Rptr. 72] [proposed class consisted of disabled students who had allegedly been beaten, abused and publicly humiliated, so that separate issues in that "mass-tort action" were "overwhelmingly numerous and substantial when compared to the few issues" common to the class and, even if it could be determined the district's policies and practices encouraged abuse of students, "this determination could not resolve the lawsuit, which would still require a full trial on each and every alleged incident of abuse with respect to fault, causation, damages, and affirmative defenses"]; Silva v. Block (1996) 49 Cal.App.4th 345, 352 [56 Cal.Rptr.2d 613] [affirming sustaining of demurrer where proposed class consisted of people wrongly and unjustifiably attacked by police dogs; question of liability to individual class members "would depend upon the particular conduct in which the suspect was engaged and the facts apparent to the handler before the police dog was employed"]; Brown v. Regents of University of California, supra, 151 Cal.App.3d at pp. 986, 989-990 [determination of class status on demurrer proper where proposed class consisted of those injured by hospital's failure to provide adequate coronary care; case presented "a veritable quagmire of tough factual questions" that could only be resolved by individual proof, as opposed to a "relatively simple consumer fraud action"].)
(5) By contrast, the operative pleading here does not demonstrate that individual issues affecting the Club's liability will likely predominate. There *978 is no discernible difference between this action and the wage and hour cases (or their type) at issue in Prince and, more recently, in Tarkington. As we explained in Prince and reiterated in Tarkington, such cases "`routinely proceed as class actions' because they usually involve `"a single set of facts applicable to all members,"' and `"one question of law common to class members."'" (Tarkington, supra, 172 Cal.App.4th at p. 1511, quoting Prince, supra, 118 Cal.App.4th at pp. 1327-1328.) As long as the lead plaintiff "`alleges institutional practices ... that affected all of the members of the potential class in the same manner, and it appears from the complaint that all liability issues can be determined on a class-wide basis,'" no more is required at the pleading stage. (Tarkington, at p. 1511.)[4]
*979 This case falls squarely into that category.[5] Appellants have alleged that, pursuant to a Club policy or practice, they and similarly situated hourly, nonunion employees have been denied meal and rest breaks to which they are legally entitled, or compensation therefor. On these allegations, it is clear that the Club liability, if any, to the class as a whole, can be determined by reviewing a single or set of facts common to all.
The Club points to the recent decision in In re BCBG Overtime Cases (2008) 163 Cal.App.4th 1293 [78 Cal.Rptr.3d 257] (BCBG), to support its assertion that the trial court acted appropriately by deciding the sufficiency of the class action allegations on demurrer. The court in BCBG did observe that "if the defects in the class action allegations appear on the face of the complaint ... the putative class action may be defeated by a demurrer or motion to strike." (Id. at pp. 1298-1299.) But the Club ignores pivotal distinctions between this case and BCBG.
BCBG involved a motion to strike in a case that had been pending for four years since the filing of the initial complaint. During the 33 months between the filing of the operative complaint and the motion to strike, the parties had "been engaged in `an extensive law and motion battle regarding the identity of members of the putative class ....'" (BCBG, supra, 163 Cal.App.4th at p. 1300.) And, most importantly for our purposes, the "`motion to strike'" in BCBG was "not a motion to strike used during the pleading stage of a lawsuit in both California and federal procedure. (Code Civ. Proc., § 435; Fed. Rules Civ. Proc., rule 12(f), 28 U.S.C.)" (Id. at p. 1299, italics added.) Rather, it was a motion filed under California Rules of Court, rule 3.767, "seeking to have the class allegations stricken from the complaint by asking the trial court to hold an evidentiary hearing and determine whether Plaintiffs' proposed class should be certified." (163 Cal.App.4th at p. 1299.) The BCBG court ultimately observed and adhered to the abiding rule that "[c]lass certification is generally not decided at the pleading stage of a lawsuit," and the "`preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation.'" (Id. at p. 1298.) BCBG has no bearing here.
(6) We return again to and rely upon the well-established principle that "only in mass tort actions (or other actions equally unsuited to class action treatment) [should] class suitability ... be determined at the pleading stage. *980 In other cases, particularly those involving wage and hour claims, [such as the instant action,] class suitability should not be determined by demurrer." (Prince, supra, 118 Cal.App.4th at p. 1325, italics added; see also Tarkington, supra, 172 Cal.App.4th at p. 1512.)
(7) We will reverse the order dismissing the action following the sustaining without leave to amend of the demurrer to the TAC based on the trial court's finding that the pleading failed to "allege facts sufficient to show the existence of a class." It was premature for the trial court to make determinations pertaining to class suitability on demurrer. The allegations of the operative complaint are sufficient to move the action beyond the pleading stage.[6]

DISPOSITION
The order dismissing the action as to all putative members of the alleged class and as to all representative and/or class allegations is reversed. Appellants shall recover costs on appeal.
Mallano, P. J., and Chaney, J., concurred.
NOTES
[1] Although the cover page also listed a claim for violation of Labor Code section 558, no cause of action for violation of that statute was pleaded in the body of the complaint.
[2] There are related class action cases pending, at least one of which involves card dealers. The parties have stipulated the "dealers are not included among the members of the putative class [Gutierrez and Salazar] seek to represent" here.
[3] The Club asserts this appeal is from a nonappealable order sustaining the demurrer to plaintiffs' PAGA claim. Both assertions are wrong. First, the appeal is from an order dismissing the action as a representative action, following the sustaining of a demurrer without leave to amend, after the court found plaintiffs failed to state a cause of action by virtue of their failure to show the existence of an ascertainable class. The trial court never addressed the merits of the demurrer with respect to the PAGA claim. Second, when an order sustaining a demurrer without leave to amend has the effect of preventing further proceedings as a class action and disposes of the action, it is an appealable final judgment. (Prince v. CLS Transportation, Inc. (2004) 118 Cal.App.4th 1320, 1322, fn. 2 [13 Cal.Rptr.3d 725] (Prince).)
[4] Numerous courts have reached the same result in wage and hour cases and other actions in which the defendant's liability to the class as a whole can be determined by reviewing facts common to all. For example, in Rose v. City of Hayward (1981) 126 Cal.App.3d 926 [179 Cal.Rptr. 287], the proposed class consisted of retired employees and the survivors of deceased employees. The court found that "[t]he one decisive issue pervading the litigation, whether the class members have been wrongfully deprived of pension benefits by an improper method of computation, will not be decided on the basis of facts peculiar to each class member, but rather, on the basis of a single set of facts applicable to all members. Thus, [the] action involves only one claim which turns on only one question of law common to all class members. Consolidation in a class action thereby creates substantial benefits for both the parties and the courts in that class action disposition averts the unnecessary risk of numerous and repetitive administrative and judicial proceedings with the attendant possibility of inconsistent adjudication." (Id. at p. 933; see also Morillion v. Royal Packing Co. (2000) 22 Cal.4th 575, 579 [94 Cal.Rptr.2d 3, 995 P.2d 139] [class action proper for past and present agricultural employees claiming entitlement to compensation for time spent going to and from employer's fields]; Madera Police Officers Assn. v. City of Madera (1984) 36 Cal.3d 403 [204 Cal.Rptr. 422, 682 P.2d 1087] [class action proper for police officers seeking payment of overtime wages, an accounting, and declaratory relief]; Daar v. Yellow Cab Co. (1967) 67 Cal.2d 695, 713-714 [63 Cal.Rptr. 724, 433 P.2d 732] [class of taxicab users seeking recovery for overcharges by taxi company; allegations established a well-defined community of interest in questions of law and fact affecting the class, including that each class member was known to the defendant and the exact amount of overcharge could be ascertained from defendant's own records or other information within its knowledge]; Jaimez v. Daiohs USA, Inc. (2010) 181 Cal.App.4th 1286, 1300-1306 [105 Cal.Rptr.3d 443] [common issues of fact and law predominate in putative class action by sales representatives alleging failure to pay overtime or provide meal or rest breaks]; Parris v. Superior Court (2003) 109 Cal.App.4th 285 [135 Cal.Rptr.2d 90] [class action proper by group of employees alleging violations of state wage and hour laws regarding overtime compensation]; Bell v. Farmers Ins. Exchange (2001) 87 Cal.App.4th 805 [105 Cal.Rptr.2d 59] [class action proper to recover for alleged nonpayment of overtime compensation]; Wilner v. Sunset Life Ins. Co. (2000) 78 Cal.App.4th 952 [93 Cal.Rptr.2d 413] [demurrer improperly sustained in class action composed of persons who had purchased whole life insurance policies as a result of defendant's allegedly deceptive practices].) In these cases, class suitability issues were decided after the pleading stage. (But see Alvarez v. May Dept. Stores Co. (2006) 143 Cal.App.4th 1223, 1233-1238 [49 Cal.Rptr.3d 892] [in which our colleagues in Div. Four affirmed the trial court's order sustaining demurrer in a wage and hour class action based on collateral estoppel; identical class of plaintiffs had already been denied certification after full evidentiary hearing in related case].)
[5] The trial court found far less specific allegations minimally adequate when it overruled the Club's demurrer to the FAC. At that time it noted, correctly, that there would be "ample time later to determine whether there is a single class, several classes and whether this plaintiff can represent some or all of the classes ... [and that,] in this case, the statement that defendant has not provided its employees with proper rest periods states both the facts and the theory." The record reveals no explanation for the court's abrupt reversal of course in sustaining demurrers to the SAC and TAC, which contain virtually identical (or more specific) allegations.
[6] The trial court never reached the merits of the Club's argument on demurrer regarding appellants' failure to state a cause of action for violation of the PAGA. Our resolution of this appeal renders it unnecessary for us to do so. Accordingly, we need not take judicial notice of the legislative history of Senate Bill No. 796, and the Club's request that we do so is denied.