[No. G038594. Fourth Dist., Div. Three. June 13, 2008.]

In re BCBG OVERTIME CASES.

**Counsel**

Callahan, McCune & Willis, Robert W. Thompson and Douglas A. Wright for Plaintiff and Appellant.

Call, Jensen & Ferrell, Scott J. Ferrell, Julie R. Trotter and Melinda Evans for Defendant and Respondent.

**Opinion**

**SILLS, P. J.**—Christina Denkinger appeals from the order granting the motion made by the defendant, AZ3, Inc., to strike class allegations from her complaint. She contends the trial court erred in granting the motion to strike based on evidence outside the pleadings; at the least, she contends, the trial court should have given her leave to amend the complaint. Alternatively,

Denkinger contends if the trial court properly relied on evidence outside the pleadings, it erred in striking the class allegations without affording her an opportunity to test the evidence through discovery.

We find the trial court correctly handled the motion under class certification guidelines, properly receiving evidence on the class certification issue and exercising its discretion in denying certification. Accordingly, we affirm.

## FACTS

In December 2002, John Williams and James Thornhill filed a class action complaint against AZ3, Inc., doing business as BCBG Maxazria (BCBG), on behalf of all managers and assistant managers in BCBG's California stores during the preceding four years. The complaint alleged causes of action for failure to pay overtime compensation (Lab. Code, §§ 1194, 1197) and disgorgement of unpaid wages (Bus. & Prof. Code, § 17200 et seq.). In April 2004, Christina Denkinger filed a class action complaint alleging the same causes of action. The three plaintiffs (collectively referred to as Plaintiffs) then filed a coordinated complaint against BCBG in March 2005.

The coordinated complaint alleges that BCBG designated all managers and assistant managers as "exempt" to avoid paying them overtime wages. They were "expected and required to work more than forty hours per week" and were "regularly and customarily scheduled to and required to work more than eight hours per day or more than forty hours per week and, in some instances, were required to work over sixty hours per week without overtime pay . . . ." BCBG's policy of operating stores without incurring employee overtime required the managers and assistant managers to work over 40 hours per week and "spend over fifty percent of their working hours performing the duties delegated to non-exempt employees."

In January 2007, BCBG filed a motion "to strike class allegations pursuant to California Rules of Court, [rule] 1857(a)(3)[1] and/or for judgment on the pleadings." In the points and authorities, BCBG explained the nature of its business: "BCBG is an haute couture design house for French-American styled women's clothing. . . . In California, BCBG has maintained approximately 32 business locations with a variety of differing operating scenarios— for instance, some boutiques are small, stand-alone shops, others are large destination locations; some other[s] are small outlet/discount locations, while others are large (even multi-level) locations in malls; still others are incorporated as part of outdoor shopping plazas." Not all BCBG shops carry the same merchandise; "only a handful of BCBG boutiques have been considered

---

[1] All rule references are to the California Rules of Court unless otherwise indicated.

'Collection stores' that carry the high-end seasonal collections designed by Max Azria's design house and shown on world-class fashion runways."

BCBG submitted declarations of 25 current or former managers and assistant managers from various California stores supporting its contention that managers are not assigned uniform duties and spend no more than 50 percent of their time on nonmanagerial work. Different stores target different customers, each requiring a different business strategy. Hours of operation and staffing differ according to each shop's unique circumstance and market focus. And the boutiques are neither uniformly designed nor share a uniform layout. "[I]ndependent judgment [of the manager] is necessary in analyzing where and how to display or store clothes, the 'sight lines' of shoppers entering the shop, the number and location of windows and walls, and hidden areas that are at high risk for shoplifting, while factoring in the volume and variety of clothing sold in that particular location, the availability of storage space, and promoting the interests of clientele for that particular boutique."

The Plaintiffs opposed the motion, contending it was an improper attempt to circumvent the class certification process. The tentative decision issued by the court was to grant the motion, and at oral argument, the Plaintiffs asked that the motion be continued to allow them to depose some of the declarants. The Plaintiffs also requested "a third-party administrator to provide notice to all of the individuals, who[m] they claim to have opt-outs from, so that we can give them . . . the opportunity to contact us." They also asked, "at the very least," leave to amend the complaint as to Thornhill to add claims for failure to calculate correctly the overtime paid for hourly employees. "And we will be bringing a motion to [amend], or requesting your honor, today, to permit us [to] do so, in light of the tentative [decision] to grant the motion to strike . . . ."

The trial court granted the motion to strike the class allegations, finding the motion was properly before it because "class certification issues may be determined at any time during the litigation." It found that BCBG had met its burden to show that the action is not suitable for class certification by producing "substantial evidence which establishes that Plaintiffs cannot prove the elements of typicality or commonality necessary for class certification."

## DISCUSSION

On appeal, Denkinger[2] contends the motion to strike was improperly granted for two alternative reasons: (1) evidence outside the pleadings cannot be considered on a motion to strike unless it is the subject of judicial notice;

[2] Thornhill and Williams do not appeal.

or (2) the motion was an untimely challenge to class certification before the Plaintiffs could make their motion to certify the class, and it was granted without giving them the opportunity to test the veracity of the evidence submitted by BCBG.[3] Neither contention has merit. We find BCBG's motion filed under rule 3.767 was not an attack on the pleadings, like a traditional motion to strike; rather, it was a request to initiate the class certification process. The motion was timely, and the trial court properly took evidence outside the pleadings and denied the belated discovery request.

■ Trial courts are given broad flexibility when dealing with the certification of class actions. (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1087 [56 Cal.Rptr.3d 861, 155 P.3d 268].) In fact, our Supreme Court has urged trial courts "to be procedurally innovative, encouraging them to incorporate procedures from outside sources in determining whether to allow the maintenance of a particular class suit." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 453 [115 Cal.Rptr. 797, 525 P.2d 701].) The law governing California class actions is comprised of a mixture of federal and state law: California law controls if it exists. Otherwise, " '[i]n the absence of California authority, California courts may look to the Federal Rules of Civil Procedure (FRCP) and to the federal cases interpreting them [citation].' [Citation.]" *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 546 [72 Cal.Rptr.3d 888].)

■ The California Rules of Court provide that any party may file a motion to certify a class. (Rule 3.764(a)(1).) That rule further provides that the motion should be filed "when practicable." (Rule 3.764(b).) The comparable federal rule, Federal Rules of Civil Procedure (28 U.S.C.), rule 23, provides the trial court shall determine whether the action should be maintained as a class action "[a]t an early practicable time after a person sues or is sued as a class representative . . . ." (Fed. Rules Civ.Proc., rule 23(c)(1)(A), 28 U.S.C.) California Rules of Court, rule 3.767 (formerly rule 1857, under which BCBG filed its motion) authorizes the trial court, inter alia, to "[r]equire that the pleadings be amended to eliminate allegations as to representation of absent persons, and that the action proceed accordingly." (Rule 3.767(a)(3).) This California rule is virtually identical to Federal Rules of Civil Procedure, rule 23(d)(1)(D).

■ Class certification is generally not decided at the pleading stage of a lawsuit. "[T]he preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation." (*Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 154 [166 Cal.Rptr. 16].) However, if the defects in the class action allegations

---

[3] Denkinger does not contend there was insufficient evidence to support the court's ruling that the action was not suitable for class treatment.

appear on the face of the complaint or by matters subject to judicial notice, the putative class action may be defeated by a demurrer or motion to strike. (*Id.* at p. 154.) BCBG's "motion to strike" was not a motion to strike as used during the pleading stage of a lawsuit in both California and federal procedure. (Code Civ. Proc., § 435; Fed. Rules Civ.Proc., rule 12(f), 28 U.S.C.) It was a motion seeking to have the class allegations stricken from the complaint by asking the trial court to hold an evidentiary hearing and determine whether Plaintiffs' proposed class should be certified. "A motion to strike class allegations is governed by Rule 23, not Rule 12(f). Rule 23 requires that the Court decide the certification issue at the earliest time possible." (*Bennett v. Nucor Corp.* (E.D.Ark., July 6, 2005, No. 3:04CV002915WW) 2005 WL 1773948, at p. *2, fn. 1.)

■ Under both California and federal law, either party may initiate the class certification process. In *Carabini v. Superior Court* (1994) 26 Cal.App.4th 239 [31 Cal.Rptr.2d 520], a state appellate panel explained the California class certification process: " 'As soon as practical after commencement of a lawsuit that purports to be a class action, a hearing must be held on whether it will be allowed to proceed as such. The hearing may be held either on the motion of the representative to *certify* the case as a class action; or, on motion by the party opposing the class to *dismiss* the class action allegations; or, by the court on its *own motion* . . . .' [Citations.]" (*Carabini v. Superior Court, supra,* 26 Cal.App.4th at p. 242.)

In *Thomas v. Moore USA, Inc.* (S.D.Ohio 1999) 194 F.R.D. 595, a federal trial court used class certification guidelines when ruling on a motion to strike class allegations. The defendants had filed the motion to strike the class allegations under former rule 23(d)(4) of the Federal Rules of Civil Procedure (28 U.S.C.) in response to the plaintiffs' class action complaint for antitrust violations. "Although the class action issue is before the Court in the context of a preemptive Motion to Strike, as opposed to an affirmative motion from the Plaintiffs to certify a class, a proper analysis nevertheless must begin with Rule 23 of the Federal Rules of Civil Procedure, which governs the maintenance of class actions." (194 F.R.D. at p. 597.)

Denkinger cites *Beauperthuy v. 24 Hour Fitness USA, Inc.* (N.D.Cal., Nov. 28, 2006, No. 06-0715SC) 2006 WL 3422198 in support of her contention that a preemptive motion to strike class allegations is improper. In *Beauperthuy,* employees of 24 Hour Fitness filed a class action complaint alleging their right to arbitrate certain disputes. After a convoluted litigation history, the operative complaint was filed in February 2006. The court held a status conference in June 2006, after which it ordered the parties to either file a motion to compel arbitration or a motion to certify the class. The court granted the plaintiffs' limited discovery for the class certification motion. In

November 2006, the defendant filed its motion to strike the class allegations under former rule 23(d)(4) of the Federal Rules of Civil Procedure (28 U.S.C.).

The court found the motion was "an improper attempt to argue against class certification before the motion for class certification has been made and while discovery regarding class certification is not yet complete." *Beauperthuy v. 24 Hour Fitness USA, Inc., supra,* 2006 WL 3422198, at p. *3.) It found the motion was premature because the court had not yet addressed whether the action should proceed as a class action. "An examination under Rule 23(c) whether to certify a class is 'procedurally inseparable' from a determination under Rule 23(d)(4) whether the Court, on the basis of that examination, should require an amendment of the pleadings. [Citation.] Indeed, the bulk of Defendants' arguments in favor of its Motion are actually arguments against class certification. . . . It would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still on-going." (*Ibid.*)

The record in the case before us presents a different procedural posture. BCBG's motion was filed 22 months after the filing of Plaintiffs' coordinated complaint, 33 months after Denkinger's complaint, and four years after Williams and Thornhill's complaint. During the time between the filing of the coordinated complaint and the motion, Plaintiffs had, as Denkinger puts it, been engaged in "an extensive law and motion battle regarding the identity of members of the putative class and the declarations filed in support of Respondent's Motion . . . ." Denkinger provided us with the transcript of a hearing in November 2006 where Plaintiffs asked the court to send out a notice to the putative class members because they did not have their contact information. The record does not include the moving papers, but it does include BCBG's opposition to the request. From reading these documents, we glean the following: Apparently, BCBG had been contacting putative class members and getting them to sign "some sort of . . . an optout agreement." Plaintiffs did not have contact information for the putative class members and had been unsuccessful in discovery attempts to obtain it from BCBG. Plaintiffs suspected that BCBG might be giving the putative class members misinformation to induce them to settle their potential claims. The court remarked, "[T]his is frankly when a class rep ought to be out there dialing for dollars, talk[ing] to their friends and former employees, . . . and saying what's going on out there, what have you heard. And that's the kind of investigative work that would really, to me, make a class rep worth their weight in gold."

The court apparently denied Plaintiffs' request to send out the notice. Plaintiffs had two discovery motions pending at that time: one to produce

documents and one to compel further answers to interrogatories. Again, the record does not include the moving papers, but does include opposition to both motions. The motions were continued to the hearing on BCBG's motion to strike and were denied as moot after the court granted the motion to strike.

BCBG's motion to strike the class allegations was not made before Plaintiffs had a chance to conduct discovery on class certification issues. Such discovery had been going on for some time, although some of Plaintiffs' efforts had apparently been thwarted by adverse rulings from the court. The propriety of these rulings is not before us.[4] Plaintiffs received proper notice of BCBG's motion and had the opportunity to respond with evidence of their own.[5] They presented nothing to counter BCBG's evidence that the action did not meet the requirements of a class action.

Denkinger complains Plaintiffs have not had the opportunity to test the veracity of the declarations submitted by BCBG in support of its motion; she argues they should have been granted leave to depose the declarants. But she could have asked for leave to conduct discovery and a continuance after she received notice of the motion. The only discovery request Plaintiffs made was at oral argument, and that request was for an opportunity to explore their suspicion that BCBG had engaged in misrepresentations to the declarants. "Give us three former employees, who have submitted declarations in the case. Let us take their depositions. Limit it to two hours apiece. [¶] I think that is very unobtrusive. That will let us get to the heart of the matter, immediately. We will be able to determine, very quickly, whether there is some nefarious conduct going on here."

By the time the court made its ruling on BCBG's motion, it had a long history with this case, something this court does not have. Trial courts are afforded broad discretion when managing class actions (*Fireside Bank v.*

---

[4] We do not know why Plaintiffs have been unable to obtain the contact information for BCBG's former and current managers. "Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. (E.g., *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 820–821, 836 [97 Cal.Rptr.2d 226], *Budget Finance Plan v. Superior Court* (1973) 34 Cal.App.3d 794, 799–800 [110 Cal.Rptr. 302]; see Code Civ. Proc., § 2017.010.)" (*Pioneer Electronics (USA) Inc. v. Superior Court* (2007) 40 Cal.4th 360, 373 [53 Cal.Rptr.3d 513, 150 P.3d 198].) BCBG's opposition to the request for a precertification notice seems to be based on its assertion that there is nothing improper about its precertification contact with the putative class members.

[5] "Notice of a motion to certify or decertify a class or to amend or modify a certification order must be filed and served on all parties to the action at least 28 calendar days before the date appointed for hearing. Any opposition to the motion must be served and filed at least 14 calendar days before the noticed or continued hearing . . . . Any reply to the opposition must be served and filed at least 5 calendar days before the noticed or continued date of the hearing . . . ." (Cal. Rules of Court, rule 3.764(c)(1).)

*Superior Court, supra*, 40 Cal.4th at p. 1083), and we presume the correctness of their rulings unless an abuse of discretion is shown. Denkinger has not met her burden of demonstrating error.[6]

### DISPOSITION

The order granting BCBG's motion to strike the class allegations is affirmed. Respondents are entitled to costs on appeal.

Fybel, J., and Ikola, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 24, 2008, S165348. Corrigan, J., did not participate therein.

---

[6] Denkinger argues in her briefs that she should have been granted leave to amend her complaint. At oral argument, however, she conceded she had no additional facts to add to the complaint, thus rendering her argument moot.