Filed 9/9/14  Torres v. Superior Court CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUSTINA TORRES et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ORANGE COUNTY, <br><br> Respondent; <br><br> MARRIOTT INTERNATIONAL, INC., <br><br> Real Party in Interest. <br><br> ——————————————— <br><br> JUSTINA TORRES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC., <br><br> Defendant and Respondent. | G048480 <br><br> (Super. Ct. No. 30-2011-00534323) <br><br> O P I N I O N |

Appeal from the first order treated as an original proceeding; petition for writ of mandate from order of the Superior Court of Orange County, Steven L. Perk, Judge.  Petition granted.  Appeal from the second order reversed and remanded with directions.

Quintilone & Associates and Richard E. Quintilone II; Law Offices of John D. Trieu and John Dzung Trieu for Petitioners, Plaintiffs and Appellants.

No appearance from Respondent Superior Court of Orange County.

Payne & Fears, Daniel F. Fears, Eric C. Sohlgren and James R. Moss for Real Party in Interest, Defendant and Respondent Marriott International, Inc.

\*          \*          \*

## I.  INTRODUCTION

This consolidated appeal is taken from an order striking class action allegations and an order denying a motion to amend the original complaint.  The trial court made each order in the sequence in which the motion was presented.  Since the defendant's motion to strike the class action allegations was made first, it was considered first, then the court considered the plaintiffs' motion to amend their complaint.  Unfortunately, while the trial judge was taking the motions in the order in which they had been presented to him, the law governing the processing of procedural challenges to class action allegation is geared so that motions to amend should be considered before motions to strike.  And, as it turns out, the motion to amend should have been granted; the case was still relatively young procedurally and the defendant could show no prejudice.  As we explain below, we are compelled to reverse the order denying the motion to amend and remand the order striking the class action allegations for further consideration in light of the newly amended complaint.

2

## II. FACTS

A class action complaint was filed December 30, 2011, against Marriott International, on behalf of Justina Torres and Elidia Mejia (plaintiffs), former housekeepers at a Residence Inn by Marriott. By May 2012, the parties had stipulated to having the Residence Inn substituted in for Marriott as the correct employer based on the fact the plaintiffs had only been employed by the Inn.[1]

The complaint alleged that the class includes all nonexempt (i.e., hourly) employees of the Inn since December 2008, and that members of the class had been injured by the violation of California labor laws covering the topics of overtime, minimum wages, rest periods, meal periods, itemized statements, and termination pay. The complaint was generic. No specific policies or practices in violation of California law were identified. Rather, the complaint merely and literally only listed *questions* – not allegations – that could be asked of *any* business that employs hourly employees. For example: "What were and are the policies, programs, practices, procedures and protocols of Defendants regarding rest periods for Class Members?" The various causes of action corresponded to the major topics in California wage and hour law and were essentially nothing more than a check list of labor laws – roughly the equivalent of: "here's a list of laws we allege you violated, somehow, someway."

The Inn answered. The balance of 2012 (May to December) was taken up with battles over discovery. One aspect of the discovery battle is particularly noteworthy for purposes of this consolidated appeal: Discovery turned over by the Inn disclosed that it had a clock-in clock-out rounding policy for hourly employees that does not always round in favor of employees. For example, if an employee clocks in at the beginning of a

---

[1] Marriott International was originally named as the defendant. About five months later, the parties stipulated to substitute Residence Inn by Marriott for Marriott International. In their briefing, the parties refer to Residence Inn by Marriott as "RIBM." We decline to follow suit in order to make it easier for readers to recognize the differences in the two businesses – one is definitely not a traditional big hotel but an "extended-stay" hotel. Accordingly, we refer to Residence Inn by Marriott as the "Residence Inn" or often just as "the Inn," and to Marriott International as either Marriott or Marriott International.

shift that starts at 8:34 a.m., the policy would deem the employee to have clocked-in at 8:35 a.m., resulting in the loss of a minute.

In February 2013, the case came to a head. Two motions were filed in rapid succession: First, on February 19, came the Inn's motion to strike the class action allegations. Two days later, the plaintiffs filed their motion to amend their original complaint. Both motions were heard on March 22.

Most of the evidence supporting the motion to strike was intended to show that the personnel policies of the Inn complied with substantive California wage-and-hour law, e.g., that employees were ordered to take meal breaks and rest breaks, and to start them before the fifth hour of any shift. The motion also outlined the decentralized management structure of the Inn. There are 26 such inns in California, and the local management of each inn is responsible for processing payroll and paying overtime.[2]

The essence of the request to strike the class-based allegations was based on the absence of any "across-the-board" policies that might contravene wage and hour law, ergo litigation of class claims would involve "a myriad of detailed, factual inquires as to each employee." For example, the motion recognized Torres had testified at her deposition that she sometimes did work beyond eight hours, but always *unbeknownst* to management.

The motion to amend was filed two days after the motion to strike. Its focus was the discovery of a rounding policy which, the motion contended, results in underpayment of wages to all non-exempt employees, not just housekeepers. The motion alleged that the Inn's rounding policy only rounds up. The motion also recounted Torres'

_____

[2]    The motion mentioned a variation in time-keeping that applies to 10 of the 26 inns in California. Under a "Pay Per Room" program in operation at the two inns where Torres and Mejia worked, housekeepers get the option of completing a given number of rooms in less than 8 hours and going home and being paid for 8 hours, or they can work for 8 hours and get paid for 8 hours. The program contemplates cleaning a minimum of 16 rooms per 8-hour shift, with enough time for a 30-minute meal period and two 10-minute rest breaks. In no event, however, would a housekeeper receive anything less than the minimum wage for an 8-hour shift, even if the 16-room minimum was not met.

4

personal experience with paid time off: Torres separated from employment with the Inn August 11, 2009, with 190.8 hours of accumulated paid time off, but wasn't paid for those hours until October 8, 2012 (which was in the middle of the discovery period).

The only new allegations in the proposed amended complaint were the rounding policy and a specific reference to Torres not having been paid her 190.8 hours. There was, however, also some added language to the balance of the proposed amended complaint which basically added the words "consistent policy" to previous (conclusory) allegations that the Inn had been violating California wage and hour law.[3] We note that the Inn's 16-rooms-and-you-get-to-go-home policy was *not* specifically mentioned in the proposed amended complaint.

The motion to amend and the motion to strike were both heard March 22, 2013. The court considered the motion to amend first. Plaintiffs' counsel only mentioned the Inn's rounding policy and the unpaid paid-time-off as specific instances of labor law violations where the complaint needed to be amended. Counsel for the plaintiffs also argued it wasn't until the depositions of his clients that he discovered they were subject to a rounding policy. He argued the "mistake" – the characterization might as well have had Dr. Evil quotes around it – as to Torres' unpaid time off was an example of the "types of mistakes" the Inn was making.

As to the motion to strike, plaintiffs' counsel argued there was no need to produce any evidence at all. He said his clients just don't know about any violations until they consult with an attorney, though in the process he acknowledged that his clients typically *do* have their "personnel file, payroll records and punch times" when they initially consult with an attorney. On that point, he said that in the case at hand he didn't actually receive the Inn's "actual rounding policy" until December 2012.

---

[3]     To quote from the proposed amended complaint: "Defendant has had a *consistent policy* of requiring employees to work more than eight (8) hours in any given day and/or more than forty (40) hours in any given week, and not pay overtime compensation pursuant to applicable California Labor Code requirements." (Italics added.)

As to the motion to amend, the trial judge found the motion both procedurally and substantively deficient. Procedurally, the trial judge ruled that the motion did not comply with the California Rules of Court requiring motions to amend to explain the precise timing of the discovery of facts prompting the amendment, and thus why the amendment could not have been brought earlier. In regard to the effort to include the rounding policy in an amended complaint, the trial judge noted that the motion did not explain *how* the rounding policy was illegal, or *when* plaintiffs' counsel discovered the policy. Substantively, the trial judge determined that allowing amendment would prejudice the defendant by "changing the core claims presented," plus "greatly broadening the scope of discovery," and all that "in the face of a pending motion to terminate class claims." The judge specifically noted that the motion to amend was made two days after the motion to strike.

Turning to the motion to strike, the trial judge reasoned the defendant could attack class claims at any time, and had shown "there is no reasonable possibility that plaintiffs could establish commonality to support class claims." (Citing *Silva v. Block* (1996) 49 Cal.App.4th 345, 349-350 [noting where complaint fails to "allege facts sufficient to establish the elements necessary for maintenance of a class action, it was not error for the court to dispose of the matter on demurrer"].) The judge noted the plaintiffs had offered no "declarations or evidence of unlawful 'uniform' employer policies." The one instance of off-the-clock work was a case where other employees had requested towels to be taken to a room, but that request was unknown to management. That instance was too "isolated" to support a class action, particularly in the absence of any evidence the same thing happened to other employees. Likewise, there was no evidence that any employee other than Torres had suffered a failure to receive accumulated paid time off at termination. Formal orders as to both motions were signed March 27, 2013, and by May 20, 2013, the plaintiffs had filed a notice of appeal from both orders.

6

## III. DISCUSSION

A. *Overview of Class Action Procedure*

Because of the interrelationship motions to strike and motions to amend, an overview of the law governing how class action allegations are processed is required: Just because a complaint may allege claims purportedly on behalf of some class does mean the case will turn into a "class action." Strictly speaking, there is no class action until the trial court certifies a class. (E.g., *Thompson v. Automobile Club of Southern California* (2013) 217 Cal.App.4th 719, 734.].) But certification is provided for, not by statute,[4] but in a California Rule of Court, rule 3.764 (hereafter rule 3.764). The rule begins by treating motions to certify and decertify equally in the same sentence,[5] and requires of such motions 28 calendar days' actual notice prior to the hearing.[6]

Interestingly though, rule 3.764(b) makes a normative, but not mandatory, statement about motions to certify (but does not make the same statement about motions to decertify). The rule says motions to certify a class *should* be made "when practicable." To the degree that there is a hint of urgency in the phrase "when practicable," that urgency is confirmed by the power given trial court in the next sentence of rule 3.764(b)

---

[4] The statutory basis for class actions in California is section 382 of the Code of Civil Procedure. (*Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602.) However, Code of Civil Procedure section 382 is a very general, one-sentence statute. In fact, it doesn't even use the phrase "class action." And the authority for class actions is relegated to the second half of a compound sentence: "If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (*Ibid*.)

Federal Rules of Civil Procedure, rule 23 is much more detailed in prescribing class action procedures and so, on occasion, California courts look to rule 23 and federal cases interpreting rule 23 for guidance. (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 147, fn. 2.)

[5] Rule 3.764(a) provides in its entirety:
"Any party may file a motion to:
"(1) Certify a class;
"(2) Determine the existence of and certify subclasses;
"(3) Amend or modify an order certifying a class; or
"(4) Decertify a class."

[6] Rule 3.764(c)(1) provides in pertinent part: "Notice of a motion to certify or decertify a class or to amend or modify a certification order must be filed and served on all parties to the action at least 28 calendar days before the date appointed for hearing."

to move proceedings along by setting a deadline to file a motion to certify. On the other hand, the third sentence of rule 3.764(b) tempers the urgency by reminding trial courts to "take into account discovery" in setting any deadline for class certification. The implication is that "when practicable" means after completion of at least enough discovery to ascertain whether the plaintiff's claims are amenable to class action treatment.[7]

Along the same lines, our Supreme Court has, albeit prior to the formal promulgation of rule 3.764, looked to rule 23 in urging trial courts not to delay on the certification issue: "This court has urged trial courts to be procedurally innovative, encouraging them to incorporate procedures from outside sources in determining whether to allow the maintenance of a particular class suit. More specifically, we have directed them to rule 23 of the Federal Rules of Civil Procedure, which provides: 'As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.' (Federal Rules Civ. Proc., rule 23(c)(1).) This determination may be made on motion of either plaintiff or defendant – or on the court's own motion." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 453.)

We may conclude from the language of rule 3.764 and *City of San Jose* that trial courts will be within their discretion to try to ascertain the appropriateness of class certification pursuant to formal certification proceedings at a *reasonably* early time after

---

[7] Rule 3.764 (b) provides in its entirety: "A motion for class certification should be filed when practicable. In its discretion, the court may establish a deadline for the filing of the motion, as part of the case conference or as part of other case management proceedings. Any such deadline must take into account discovery proceedings that may be necessary to the filing of the motion."

8

the filing of the complaint, *but* not so early as to be before the completion of relevant discovery.[8]

The question arises, of course, as to what procedural tools, if any, defendants have to hurry things along.  After all, from a defendant's point of view, a class action will generally represent a considerably larger potential liability against its assets than even the aggregate claims of the individual class representatives named in a class action suit.

On its face, rule 3.764 allows defendants – or indeed, the trial court on its own motion – to bring motions to decertify.  It seems anomalous, though, that a motion to *de*certify could be brought prior to a motion to *cert*ify.  While that procedure does not appear to be common in California published decisions (we'll get to the major counterexample 10 paragraphs from now), "preemptive motions to decertify" are known, and approved, by federal courts construing their own rule 23.  (See *Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009) 571 F.3d 935, 937[9]; accord, Schwarzer et al. Cal. Practice Guide:  Federal Civil Procedure Before Trial (Rutter Group 2014) ¶ 10:567.2 ["If you represent the defendant and the argument for class certification is weak or the class representative dilatory, a preemptive motion to decertify the class may reduce your client's litigation costs and terminate class action exposure."])

---

[8]        It takes no imagination to figure out why reasonably early resolution of amenability to class action treatment is administratively desirable:  Class actions typically involve thorny issues of payment for class notification (*Gonzales v. Jones* (1981) 116 Cal.App.3d 978, 983 ["Individual action does not have attendant upon it all of the ramifications and problems of a class action *which will require expensive notice procedures*."]) plus the potential for sub-classes and litigation of additional issues raised by opt-out members (*Evans v. Lasco Bathware, Inc.* (2009) 178 Cal.App.4th 1417, 1434).  On top of that is the obvious additional complexity and case management problems visited on trial courts when a case is filed as a class action.  Class actions require extra time and management work from the trial courts.  (See *City of San Jose, supra*, 12 Cal.3d at p. 460.)

[9]        Said the court:  "On appeal, we consider whether the district court abused its discretion by (1) considering Countrywide's motion to deny class certification before Plaintiffs had filed a motion to certify and prior to the pretrial and discovery cutoffs, and (2) denying class certification based on its reasoning that individual issues predominate over common issues.  See Fed.R.Civ.P. 23(b)(3).  We affirm.  *First, no rule or decisional authority prohibited Countrywide from filing its motion to deny certification before Plaintiffs filed their motion to certify*, and Plaintiffs had ample time to prepare and present their certification argument."  (Italics added.)

But, concomitant with the possibility of a preemptive motion to decertify comes the need for plaintiffs to have "ample time" to "prepare and present" the case *for* certification. (See *In re BCBG Overtime Cases* (2008) 163 Cal.App.4th 1293, 1301 [emphasizing the time plaintiffs had had to conduct their discovery on class certification issues].)

The present case, however, presents a procedure somewhat even more exotic than a preemptive decertification motion. This case involves a *motion to strike* class action allegations, as distinct from a preemptive motion to decertify an as-yet uncertified class.

Motions to strike are provided for in sections 435 and 436 of the Code of Civil Procedure, and whatever else, it is clear they are designed to be part of the *pleading* stage of the action.[10] In the context of class actions, motions to strike carry at least two major advantages for defendants: First, like demurrers, if successful they obviously avoid the expense of discovery and evidentiary hearings. (*Canon U.S.A., Inc. v. Superior Court* (1998) 68 Cal.App.4th 1, 5.) Second, they carry an added bonus not found with demurrers: They do not need to admit the validity of the factual allegations supporting the substantive claims set out in the complaint; they need only be targeted at whether those claims are amenable to class action treatment. In that limited sense, motions to strike are exactly consistent with the approach of our Supreme Court outlined in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004. *Brinker* tells us that, *essentially*, class certification is a procedural matter that assumes any claims have substantive merit, and so the focus is on the amenability of those claims to class action treatment: "A class certification motion is *not a license for a free-floating inquiry into the validity of the complaint's allegations*; rather, resolution of *disputes over the merits* of a case generally must be postponed until after class certification has been decided

_____

[10] As shown by the language in Code of Civil Procedure section 435 that contemplates motions to strike "within the time allowed to respond to a pleading."

10

[citation], with the court assuming for purposes of the certification motion that any claims have merit [citation]." (*Id*. at p. 1023, italics added.)[11]

A motion to strike, however, implicates the somewhat difficult question of when, if ever, class certification issues should be adjudicated at the pleading stage. (See *In re BCBG, supra*, 163 Cal.App.4th at p. 1298 ["Class certification is generally not decided at the pleading stage of a lawsuit."].) As noted recently in *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 213, there are several cases which have even divined a policy against deciding class certification issues at the pleading stage.[12] While the *Tucker* court has concluded that the statements in those cases disfavoring adjudication of class action issues at the pleading stage are "too broad" (see *id*. at p. 213), it is nonetheless indisputable that adjudication at the pleading stage must necessarily be done without the discovery that usually attends formal class certification motions.

We will merely add this thought: It *is* possible for class certification issues to be decided by way of demurrer or motion to strike, because defects in a case's amenability to class treatment can indeed appear on the face of a complaint. (E.g., *Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 154; *Canon, supra,* 68 Cal.App.4th at p. 5 ["where the invalidity of the class allegations is revealed on the face of the complaint, and/or by matters subject to judicial notice, the class issue may be properly disposed of by demurrer or motion to strike"]; *Pinnacle Holdings, Inc. v. Simon* (1995) 31 Cal.App.4th 1430, 1435 ["the complaint must contain sufficient allegations of class interest or the pleading is vulnerable to a general demurrer"].)

---

[11] *Brinker* does recognize, however, there will be cases where the question of class certification may be intertwined with the substantive merits of the claims. (See *Brinker, supra*, 53 Cal.4th at pp. 1023-1024.)

[12] According to *Tucker*, these cases include are: *Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320, 1325; *Gutierrez v. California Commerce Club, Inc.* (2010) 187 Cal.App.4th 969, 976; *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1510; *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 487-488, and, as their fountainhead, *Beckstead v. Superior Court* (1971) 21 Cal.App.3d 780, 782-783.

11

Even so, it cannot be denied that motions to strike class allegations are pleading stage motions, as distinct from preemptive decertification motions, which most assuredly *aren't* pleading stage motions. And that distinction brings its own baggage: Just like demurrers, motions to strike class action allegations must take into account the possibility that plaintiffs will seek to amend their pleadings to defeat the motion. Federal cases construing rule 23 make that clear. "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff. [Citations and fn. omitted.] Also *as with motions to dismiss, leave to amend must be granted* unless it is clear that the complaint's deficiencies cannot be cured by amendment." (*Tietsworth v. Sears, Roebuck and Co.* (N.D. Cal. 2010) 720 F.Supp.2d 1123, 1146, italics added.)

We may thus conclude, then, that motions to strike class action allegations – made on the pleadings – cannot be substitutes for preemptive motions to decertify – made on evidence after sufficient discovery.

On the other hand, motions to strike class action allegations do occur. (See *In re Land Rover LR3 Tire Wear Products Liability Litigation* (C.D. Cal. 2012) 2012 U.S. Dist. LEXIS 163852 at p. 2.) But, as Judge Guilford noted in the *Land Rover* case, the "granting of such motions is rare before class certification." (*Ibid*.) And, again, as we would further note, such authority stresses the essentially-pleading orientation of such motions. (See *Cholakyan v. Mercedes-Benz USA, LLC* (C.D. Cal. 2011) 796 F.Supp.2d 1220 at pp. 1-2 [rejecting motion to strike because made prior to sufficient discovery to give plaintiff a chance to bring class certification motion].)

This court's opinion in *BCBG* should not be read for a different order of approach. *BCBG* was an exceptional case, marked by prolonged delay on the part of the plaintiffs in bringing a motion to certify. The case began in 2002, and yet by 2007 the plaintiffs still had not brought a motion to certify a class. (*BCBG, supra*, 163 Cal.App.4th at p. 1298.) After noting that the motion had been made *after* the plaintiffs

12

had a "chance to conduct discovery on class certification issues" and that discovery "had been going on for some time," this court upheld the trial court's granting of the motion to strike, in the process characterizing the trial court's action as "denying certification." (*Id.* at pp. 1296, 1301.) We recognized that, under those exceptional circumstances, the motion to strike was *not* "an attack on the pleadings, like a traditional motion to strike" but rather "a request to initiate the class certification process." (*BCBG, supra*, 163 Cal.App.4th at p. 1298.) While *BCBG* is sound in its basic principle that a motion to strike can be treated as the functional equivalent of a preemptive motion to decertify after prolonged delay on the plaintiff's part (see *Moreno v. Baca* (C.D. Cal. 2000) 2000 U.S. Dist. LEXIS 21368, p. 4 [warning plaintiff that if he failed to bring certification motion "within a reasonable time" the answer the court would "entertain a motion from Defendants seeking to strike the class allegations"]), it was not intended to have application absent unusual circumstances.

What we have just recounted has several definite implications for the case before us: Though it was perfectly natural for the trial court to take the motions in the order they came in, since the trial court considered both of them the same day, the right course was to consider the motion to amend first.

That slight sequence reversal, of course, had its consequences. Because motions to strike are necessarily pleading-stage motions, the trial court should not have considered the Inn's evidentiary submissions beyond what it might otherwise have considered in evaluating any demurrer or motion to amend. Alternatively, if, for some reason the trial court had been thinking that the motion to strike was a de facto preemptive motion to decertify, the appropriate course was to postpone consideration of such a "constructive" motion to decertify until all discovery matters pertaining to class treatment had been resolved.

It appears the origin of the trial court's confusion may be understandably traced to an overreading of this court's opinion in *BCBG*. After all, it was natural for the

13

court to pay attention to an opinion directly dealing with motions to strike class action allegations from the district and division. However, let us take the opportunity now to clarify what might not have been clear up to now: *BCBG* has no application to *these* facts: This case did not get going in earnest until May 2012 (right after the stipulation to distinguish the Inn from Marriott generally), and the motion to strike was made in late February 2013, less than nine months later. That is hardly the prolonged period which, in *BCBG*, permitted a motion to strike to morph into a preemptive motion to decertify. The upshot is that the motion to amend should be evaluated first, and that is what we will do now.

B. *Motion to Amend*

1. *Need to Treat as Petition for Writ*

We must first address the question whether we can address the merits of the motion to amend in this appellate proceeding. The problem is, denials of motions to amend, in the absence of final, appealable judgments, are not appealable. (E.g., *Fuss v. City of Los Angeles* (1958) 162 Cal.App.2d 643, 646.) In this case, there is still no final, appealable judgment because the original complaint still survives as to Torres' and Mejia's individual claims. (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 762.)

However, rather than opting for outright dismissal of the appeal from the denial of the motion to amend, we exercise our discretion to consider the appeal from the order denying the motion to amend as a de facto petition for a writ of mandate seeking to vacate the order. (E.g., *H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366-1367 ["An appellate court has discretion to treat a purported appeal from a nonappealable order as a petition for writ of mandate, but that power should be exercised only in unusual circumstances."].)

This case presents sufficient unusual circumstances to treat what is effectively a premature appeal as a de facto petition for writ of mandate. Mainly, as we have just shown, motions to amend class action complaints and motions to strike class

14

action allegations cannot be separated; they are intertwined. And, in that regard, there is no question that the order granting the motion to strike is appealable. The reason is that, as explained in *Baycol Cases I & II*, an order that terminates class claims but allows individual claims to survive *is* appealable under the death knell doctrine. (See *In re Baycol Cases I & II, supra*, 51 Cal.4th at p. 762 ["If an order terminates class claims, but individual claims persist, the order terminating class claims is immediately appealable under *Daar's* death knell doctrine."].) It would be anomalous to decide the appeal from the grant of the motion to strike, but not decide something on which that appeal at least partly depends, namely the merits of the motion to amend. On top of that, it would set up the trial court and litigants for a big waste of time and effort if it turned out that denying the motion to amend was an abuse of discretion.

2. *Abuse of Discretion To Deny the Motion to Amend*

There is a distinct tilt in the law favoring the granting of motions to amend. As our Supreme Court has said any number of times in several ways, trial courts should exercise great liberality in evaluating motions to amend: "In the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment." (*Lemoge Electric v. County of San Mateo* (1956) 46 Cal.2d 659, 664; accord, *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970-971; *Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 157; *Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 664.) The clear tipping point is whether there is any prejudice to the responding party from the delay attendant on the motion to amend. Absence prejudice, there is no good reason to deny the motion. (*Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1048 ["Finally, Marker contends Kittredge unreasonably delayed moving to amend. [¶] Even if this were so, it is an abuse of discretion to deny leave to amend where the opposing party was not misled or prejudiced by the amendment."];

15

*Higgins v. Del Faro* (1981) 123 Cal.App.3d 558, 564 ["Where no prejudice is shown to the adverse party, the liberal rule of allowance prevails."]; accord, *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761.)

Here, the Inn cannot show any real prejudice from the motion to amend, even from any arguable and, in context, relatively short delay. The most it can point to is the fact that its motion to strike in late February might have been reworked if plaintiffs had moved to amend earlier, but, given the short time frame at least – plaintiffs discovered the rounding policy in December, they brought their motion in February – that extra effort was the result of the Inn's own doing. If the original complaint was indeed susceptible to having its class action allegations stricken, such a motion could have been brought at the beginning of the suit. And if the motion to strike was designed to be a de facto preemptive motion to decertify, then the Inn had to wait until discovery on class certification issues was over, lest it risk having to re-do such a motion if the plaintiffs were going to amend. Either way, the Inn can't complain that it was prejudiced from an interval of less than nine months from May 2012 to February 2013. We note here that the moving papers sufficiently disclosed plaintiffs' actual discovery of the Inn's rounding policy in December 2012.

As to the prejudice from the expansion of the putative class from just the employees of the Inn to Marriott worldwide, again, the Inn can't complain. Plaintiffs originally named Marriott, not the Inn, as the defendant, and it was plaintiffs who agreed to reduce the class in the stipulation of May 2012. In this case we see no reason why the plaintiffs' civility and good deed should be punished. If discovery in the period May to December 2012 had given the plaintiffs good reason to re-inflate the class back to its original dimensions, that delay can hardly be laid at the door of the plaintiffs. Bottom line: It was an abuse of discretion to deny the motion to amend.

16

### 3. *Remand of the Motion to Strike*

As it turned out, the trial court never got the chance to evaluate the amended complaint on its own merits.[13]  It would be premature for this court, at this stage, to attempt that evaluation in the first instance, and so we reverse the order granting the motion to strike, and remand the matter for further proceedings not inconsistent with this opinion.  For the benefit of the trial court we will offer the following observations:

(1)  We will not opine on whether the fact the motion to amend should have been granted partially or totally mooted the Inn's motion to strike.  We will leave to the trial court and the parties the question of how much, if any, of the Inn's preamendment motion to strike may be salvaged in the wake of the newly amended complaint.

(2)  Assuming the trial court reconsiders the Inn's motion to strike (perhaps with supplemental arguments from both sides), the trial court should remember that the focus will be on the text of the newly-first amended complaint.  Consideration of evidentiary matter, not otherwise cognizable in any demurrer or motion to strike anyway, should not be considered.

(3)  If the Inn or Marriott want to have evidence considered, they can bring a preemptive motion to decertify or wait for the plaintiffs to bring their own certification motion.[14]  If that happens, the motion should not be evaluated until all discovery issues related to class certification issues has been resolved.  We note that even at the time of the February 2013 motion to strike, there appears to have been outstanding discovery to be produced by the Inn.  However, since the plaintiffs have not challenged any previous

---

[13]   Both motions were heard on March 22.  Assuming that the motion to amend would have been granted, the court could have continued the hearing on the motion to strike another month and invited briefing on what should be struck from the new, first amended complaint.

[14]   If the plaintiffs bring the certification motion first, there is no question that *they* will have the burden of showing the criteria for class certification are present.  (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913, 922-923.)  But what if the Inn or Marriott brings a preemptive motion to decertify?  Does it have the burden of showing a negative?  That is a question we defer to another day.

discovery orders, we offer no opinion as to whether the limitations on "class contact" information already made by the trial court were or were not within its discretion.

(4) As *Brinker* makes clear, the question on remand will be whether the claims being made by the plaintiffs are amenable to class action treatment, *not* whether those claims are viable on the merits. (*Brinker, supra*, 53 Cal.4th at p. 1023.) A claim might be a dead-bang loser on its merits, but consideration of the merits is only permissible if the merits are intertwined or – the key word from *Brinker* – enmeshed with the question of amenability to class treatment. (See *id*. at pp. 1023-1024; see particularly p. 1024 ["As the Seventh Circuit has correctly explained, any 'peek' a court takes into the merits at the certification stage must 'be limited to those aspects of the merits that affect the decisions essential' to class certification."].) The focus must be on whether there are identifiable, across-the-board employment policies, practices or procedures, claimed to be unlawful, which should be treated on a class-wide, as distinct from individual, basis.

## IV. DISPOSITION

Treating the appeal from the denial of the motion to amend as a de facto petition for writ of mandate, we grant the requested petition, and we direct the trial court to grant the motion to amend. In light of the disposition of the order denying the motion to amend we reverse the order granting the motion to strike, and remand that matter with directions to the trial court to reconsider the motion to strike in light of the newly amended complaint.

Because of the interlocutory nature of today's disposition, the trial court will have the discretion when the final judgment is entered to award the appellate costs in this proceeding to the ultimately prevailing party.


                                              BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.